UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MELISSA TOLSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 21-146-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Melissa Tolson has moved for judgment on the pleadings, challenging the Social Security Administration's final decision regarding her application for benefits. [Record No. 14] Tolson contends that the Administrative Law Judge ("ALJ") assigned to her case did not adequately evaluate the necessity of a walker, which would render her disabled, nor did the ALJ properly evaluate her subjective complaints of pain. [*Id*.] The Acting Commissioner of the Social Security Administration filed a motion for summary judgment, contending that Tolson is merely asking that the Court reweigh the evidence to reach a different conclusion. [Record No. 16]

Having carefully considered the record, the Court concludes that the ALJ did not err in determining that Tolson was not disabled. Further the final decision of the Social Security Administration is supported by substantial evidence. As a result, the Court will grant the Commissioner's motion and deny the relief sought by Tolson.

**I.**

Tolson applied for both Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on October 25, 2018. [Administrative Transcript, "Tr." 235, 237] She previously filed an unsuccessful application for benefits on June 30, 2014. [Tr. 63] The Social Security Administration ("SSA") denied her current application initially and upon reconsideration. [Tr. 109, 111, 145, 147] Tolson then requested an administrative hearing before an ALJ. [Tr. 171-72] The parties appeared for a video hearing on May 21, 2020. [Tr. 30] ALJ Karen Jackson issued a written opinion following the administrative hearing, concluding that Tolson was not disabled. [Tr. 12-29] The Appeals Council then denied Tolson's request for review. [Tr. 1] Accordingly, Tolson exhausted her administrative remedies and this matter is ripe for review. *See* 42 U.S.C. § 405(g).

**II.**

Tolson is a 44-year-old former electronics inspector with a high school education. [Tr. 38-39] The underlying application for disability benefits alleges that she has been disabled since September 30, 2017, due to back pain, neck pain, a pinched nerve in her right leg, and depression. [Tr. 81-82] Tolson stated in a pain and daily activities questionnaire that she has a strong, sharp pain in her back, legs, hips, and neck and that this pain that interferes with her ability to sleep and function. [Tr. 276-77] She explained that she cannot perform any household chores, exercise, or outdoor activities because of this pain. [Tr. 278]

As noted, Tolson previously applied for disability benefits on June 30, 2014. [Tr. 63] ALJ Jackson issued a decision on October 19, 2016, concluding that Tolson was not disabled within the meaning of the Social Security Act ("Act"), and that she has the Residual Functional

Capacity ("RFC") to perform "sedentary work" with limitations.  [Tr. 69, 73]  In the years since this denial of benefits, Tolson has sought treatment for back and knee pain.

Tolson was examined and treated by Peter Wright, M.D, and various nurses and physician assistants, from January 9, 2017 to June 2, 2020, at the Pain Treatment Center of the Bluegrass.  [Tr. 637]  The focus of this treatment waw the pain Tolson was experiencing in her knees and lower back.  [Tr. 638]  All of Tolson's treatment records noted that she was morbidly obese and that various doctors and nurses discussed weight counseling with her.  Dr. Wright referred Tolson for an MRI on April 6, 2018, which revealed radiculopathy, degenerative changes near L3-L4, a circumferentially bulging annulus at L3-L4, a small disc protrusion at L4-L5, and a small tear at L5-S1.  [Tr. 704]

Tolson arrived on November 8, 2018, for an appointment at the Pain Treatment Center using a walker.  She was previously observed using a walker on May 9, 2018, and July 12, 2018.  [Tr. 683, 695, 736]  Treatment records from June 29, 2017, September 6, 2018, March 7, 2019,  and May 7, 2019, noted that Tolson had an unsteady gait, but that she did not use an assistive device.  [Tr. 669, 674, 691, 728]

On July 2, 2019, Celeste Christensen, PA-C, observed that Tolson has a "slowed gait" and that she used a walker.  [Tr. 664]  Christensen also noted that Tolson had a limited range of motion in her lumbar spine, but no limitation in her knees.  [Tr. 664]  Tolson informed Dr. Wright on June 2, 1990, that she would like to have bariatric surgery "this year if possible." [Tr. 638]  During a physical examination on the same date, Dr. Wright noted that Tolson's range of motion was restricted with flexion and extension, and that she had tenderness in the bilateral lumbar facets and paravertebral muscles.  [Tr. 638]  Dr. Wright administered epidurals

and steroid injections throughout the course of treatment to help with the pain.  [Tr. 657, 682, 707, 717, 720]

Chiropractor Caroline Kasik, D.O., treated Tolson's low back pain from May 2018 to March 2020.  [Tr. 363]  During this time, Dr. Kasik observed that Tolson had spinal restrictions, pain and tenderness in the lower lumbar and lumbo-sacral, and mild to moderate reduction in her range of motion.  [Tr. 363]  She addressed Tolson's low back pain with "chiropractic manipulative treatment."  [*See, e.g.*, Tr. 363, 365, 366, 367.]  On April 9, 2019, Dr. Kasik noted that Tolson was "showing improvement and meeting expectations as indicated in [the] subjective and objective evaluation."  [Tr. 415]

Anthony Karam, D.O., examined Tolson on December 29, 2018.  [Tr. 397]  Dr. Karam noted that Tolson ambulated without assistance and with a normal gait.  [Tr. 398]  He recorded that Tolson was able to bend 80 degrees and complete a ½ squat before stopping due to subjective low back pain discomfort.  [Tr. 398]  Dr. Karam diagnosed Tolson with low back pain with history of bulging disc and degenerative disc disease, sciatica, neck pain, hypertension, hypercholesterolemia, depression, and obesity.  [Tr. 399]  He further concluded that Tolson "should be able to sit, walk, and/or stand for a full workday, lift/carry objects alternating frequently from sitting, standing, and walking."  [Tr. 399]  But Dr. Karam stated that he would "anticipate difficulties with subjective pain with repetitive heavy lifting and repetitive squatting with her history of bulging discs in her cervical and lumbar spine."  [Tr. 399]

Cristi Hundley, Ph.D., performed a mental status evaluation on January 8, 2019.  [Tr. 403]  Dr. Hundley observed that Tolson "walked with a somewhat leaning posture[,] . . . her gait was slow and uneven[,]" and that she used a "wheeled walker."  [Tr. 403]  Hundley

- 4 -

diagnosed Tolson with an unspecified anxiety disorder. [Tr. 405] She further concluded that Tolson's "ability to understand and remember simple instructions and her ability to maintain attention and concentration is fair." [Tr. 405] Additionally, Hundley noted that Tolson was moderately limited in her ability to handle the stresses typically associated with a work environment and interact appropriately in a work setting.  [Tr. 405]

State consultative examiner Jean Sutherland, M.D., reviewed Tolson's record on February 7, 2019, and adopted the following portion from ALJ Jackson's previous decision from October 19, 2016:

> Claimant has the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) with lifting/carrying 10 [pounds] occasionally and less than 10 [pounds] frequently; standing/walking 2 hours in an 8-hour workday; sitting 6 hours in an 8-hour workday; avoid even moderate exposure to vibration or hazards such as unprotected heights or dangerous machinery; occasionally climbing ramps or stairs; never climbing ladders, ropes, or scaffold; and occasionally stooping kneeling, crouching or crawling.

[Tr. 92] Dr. Sutherland noted that the consultative exam conducted by Dr. Karam was inconsistent with other exams in the record because it was essentially normal except for including a  slightly limited range of motion. [Tr. 91] She also concluded that Dr. Hundley's medical opinion overestimated the severity of Tolson's restrictions and limitations. [Tr. 92] State consultative examiner Larry Freudenberger, Psy.D., also adopted the ALJ's previous decision because the evidence is consistent with non-severe psychiatric impairments and noted that Tolson's "[activities of daily living] are primarily limited by physical issues." [Tr. 89]

At the reconsideration level, Kay Barnfield, Psy.D., did not affirm the prior findings of the ALJ because there were changes to the mental listings during the intervening period. [Tr. 122] Instead, she concluded that Tolson's medically determinable mental impairments were

not severe. [Tr. 122] P. Saranga, M.D., affirmed the initial assessment regarding Tolson's physical impairments. [Tr. 124-25]

As noted, the ALJ conducted an administrative hearing by video on May 21, 2020. [Tr. 32] During this hearing, Tolson testified that she has pain in her neck, back, and knees. [Tr. 41] She explained she goes to the chiropractor and takes pain medicine, including Neurontin and Percocet. [Tr. 41-42] Tolson also affirmed that she uses a walker to ambulate as a result of the pain in her legs and knees. [Tr. 44] Tolson stated that she could only stand assisted for approximately ten minutes before she needed to sit, but if she did not have her walker, she could stand for an estimated three minutes. [Tr. 46]

ALJ Jackson issued her decision on the current application on August 3, 2020, concluding that Tolson was not disabled. [Tr. 12-29] The ALJ noted that Tolson had not engaged in substantial gainful activity between the alleged onset date and the date of last insured. [Tr. 18] Next, ALJ Jackson concluded that Tolson's degenerative disc disease and morbid obesity were severe impairments. [Tr. 18] However, she concluded that Tolson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 19]

Further, the ALJ determined that Tolson had the RFC to perform "sedentary work" subject to the following exceptions:

> [she is] limited to lifting/carrying 10 pounds occasionally and less than 10 pounds frequently; standing/walking 2 hours out of an 8-hour workday; sitting 6 hours out of an 8-hour workday; avoid even moderate exposure to vibration or hazards such as unprotected heights or dangerous machinery; limited to occasional climbing of ramps or stairs; no climbing of ladders, ropes or scaffolds; occasional stooping, kneeling or crouching and never crawling.

[Tr. 20]   ALJ Jackson also concluded that Tolson was unable to perform her past relevant work, as an electronics inspector or laborer.   [Tr. 23]   The ALJ explained that when she considered Tolson's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform, including office clerk, assembler, and weight tester.   [Tr. 23-24]   Accordingly, ALJ Jackson concluded that Tolson was not disabled from the alleged disability onset date through the date of decision.   [Tr. 24]

### III.

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. §§ 404.1520(b); 416.920(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments.  20 C.F.R. §§ 404.1520(c); 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience.  20 C.F.R. §§ 404.1520(d);

416.920(d).  Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform her past work.  20 C.F.R. §§ 404.1520(e); 416.920(e).  If she can, she is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work.  If she cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. §§ 404.1520(g); 416.920(g).  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching her decision.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  The Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

## IV.

Tolson makes two arguments in support of her assertion that the ALJ improperly determined she was not disabled.  First, Tolson alleges that the ALJ did not properly evaluate

the necessity of a walker in determining her RFC.  Second, Tolson contends that the ALJ did not adequately consider the subjective reports of her symptoms.

A.  The Need for an Assistive Device

Tolson asserts that the ALJ did not properly evaluate the necessity of a walker, which she contends would be disabling per vocational expert testimony.  [Record No. 14, p. 10] Specifically, she argues that the ALJ did not include the use of a walker in the RFC determination despite the fact that her pain management records consistently noted such use. [*Id*. at 11.]  Tolson believes that, if a walker is properly considered, it would preclude her ability to perform work.  [*Id*.]

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed. . ."  *Perry v. Berryhill*, No. 1:16-CV-2970, 2018 U.S. Dist. LEXIS 45609, at *8 (N.D. Ohio Mar. 20, 2018) (citing Social Security Ruling 96-9p, 1996 SSR LEXIS 6); *see also Parrish v. Berryhill*, No. 1:16-CV-1880, 2017 U.S. Dist. LEXIS 97457, at *12 (N.D. Ohio June 8, 2017) ("While there are some indications in the medical records that Plaintiff was using a cane, this is insufficient to establish that the cane was medically required.") *report and recommendation adopted by*, 2017 U.S. Dist. LEXIS 97454 (N.D. Ohio June 23, 2017).  Here, there is no indication in Tolson's treatment records that the use of an assistive device was ever prescribed, nor do any of her medical records include information on when the use of a walker would be necessary.  Both are required under Social Security Ruling 96-9p.  Merely using a walker is insufficient to establish that it is "medically required."  And rather than prescribe an assistive device, Tolson's doctors addressed her symptoms with chiropractic services, injections, and pain medication.

Additionally, the medical records only sometimes indicated that Tolson was observed using a walker or assistive device.  For example, Tolson was noted to have a "slowed gait" and used a walker on May 9, 2018, July 12, 2018, and November 8, 2018, and July 2, 2019.  [Tr. 664, 683, 695, 736]  However, on June 29, 2017, September 6, 2018, March 7, 2019, and May 7, 2019, treatment records indicate that Tolson did not use an assistive device.  [Tr. 669, 674, 691, 728]  Additionally, Dr. Karam noted that Tolson had a "normal gait" and "ambulate[d] without assistance."  [Tr. 398]

Further, and contrary to Tolson's argument, the ALJ addressed Tolson's assertion that she used a walker regularly.  She explicitly stated that Tolson's treatment records only noted that the claimant used a walker some of the time and that the use of such a device was never prescribed. [Tr. 21]  ALJ Jackson explained that there were various discrepancies in the record about Tolson's use of an assistive device and it was only "sporadically mentioned throughout the treatment records, with no consistency." [Tr. 21]  The ALJ also found that Tolson jumping off a truck bed was inconsistent with potential balance and stability issues that would require the use of a walker.  [Tr. 21]  And ALJ Jackson concluded that "the diagnostic evidence of record [did] not support further restrictions than as provided in the residual functional capacity." [Tr. 21]

While the ALJ did not explicitly state that the use of a walker or assistive device was not medically necessary, her explanation and conclusion about Tolson's use of a walker demonstrates that she properly considered whether the use of the walker was medically necessary.  Accordingly, the ALJ did not err in excluding the use of an assistive device in developing Tolson's RFC.

B.  Subjective Complaints of Pain

Tolson also argues that the ALJ did not adequately consider her subjective complaints of pain in reaching her determination in this case.  Regarding this issue, the Court notes that an ALJ must apply a two-step process for evaluating subjective complaints of pain.  *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 5180304 (Oct. 25, 2017); *Walters v. Commissioner of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).  First, the ALJ must conclude that there is a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.  20 C.F.R. § 404.1529(b).  The second step requires that a claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms find support in the record.  20 C.F.R. § 404.1529(c).

In the present case, ALJ Jackson properly applied the two-step analysis in considering Tolson's subjective complaints and statements regarding her impairments.  At step one, the ALJ found that Tolson's medically determinable impairments could reasonably be expected to cause the symptoms described.  [Tr. 21]  But at step two, the ALJ concluded that Tolson's subjective reports of the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence.  Likewise, the medical records did not support the frequency of the alleged limitations and symptoms.  [Tr. 21]

In making her decision regarding Tolson's subjective complaints of pain, ALJ Jackson compared Tolson's subjective complaints to the medical records, and explained how Tolson's perceived limitations did not match the medical evidence.  ALJ Jackson explained that Tolson testified that she had back, neck, and knee pain that interfered with her ability to do daily activities, that she regularly uses a walker, and that she can only stand for about 10 minutes at a time.  [Tr. 21]  ALJ Jackson stated that Tolson's severe impairments could be expected to

cause these symptoms, but the medical records were inconsistent with "allegations of debilitating impairments." [Tr. 21] For example, the ALJ noted that Tolson's contention regarding the need for an assistive device was not entirely consistent with the medical records because the use of such device is only sporadically mentioned throughout the treatment records and was never prescribed by a doctor. [Tr. 21] She also determined that Tolson's statement that her conditions were debilitating was inconsistent with Tolson jumping off a truck bed and engaging in similar activities. [Tr. 21]

The ALJ did not err in evaluating Tolson's subjective complaints of pain because: (1) she properly applied the above-stated process for evaluating Tolson's subjective complaints of pain and limiting effects of her impairments; and (2) her decision is supported by the medical evidence in the record.

## V.

If the ALJ's decision is supported by substantial evidence, the decision must be affirmed, even if the reviewing court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Here, ALJ Jackson's decision is supported by the documentary record and the conclusions of the state agency consultants. The ALJ properly addressed Tolson's impairments, singularly and in combination, her treatment records, her subjective reports of pain, the reports of the consultative examiners, and relied on the vocational expert in determining that Tolson could perform sedentary work with limitations. ALJ Jackson explained why she relied on certain

evidence and what evidence she considered persuasive throughout her analysis.   Contrary to Tolson's claims, the ALJ's decision is supported by substantial evidence.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.      Plaintiff Melissa Tolson's Motion for Judgment on the Pleadings [Record No. 14] is **DENIED.**

2.      Defendant Acting Commissioner of the Social Security Administration Kilolo Kijakazi's Motion for Summary Judgment [Record No. 16] is **GRANTED.**

3.      The Commissioner's decision denying benefits will be **AFFIRMED** by a separate judgment to be entered this date.

Dated: January 20, 2022.



Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky